UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**DONNA HOFFMAN,**

**Plaintiff,**

      v,

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:19-cv-01537-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff Donna Hoffman filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on September 16, 2019, denied Ms. Hoffman's applications for social security disability benefits and supplemental security income.  Ms. Hoffman has now moved for judgment on the pleadings (Doc. 9), and the Commissioner has filed a similar motion in response (Doc. 13).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and will direct the Clerk to enter judgment in favor of the defendant.

### I.  BACKGROUND

    Plaintiff was 50 years old when she protectively filed her applications for benefits on August 7, 2015.  Plaintiff alleged that she had been disabled since December 1, 2012.  After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on September 6, 2018, at which she and Alissa Smith, a vocational expert, both testified.

    The Administrative Law Judge issued an unfavorable decision on October 25, 2018.  In that decision, he first concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, and that she had not engaged in substantial gainful activity since her alleged onset date.  Next, the ALJ determined that Plaintiff suffered from severe impairments including chronic obstructive pulmonary disease, fibromyalgia, degenerative disc disease of the cervical spine, right knee chondromalacia patellae, and greater trochanteric bursitis of the left hip.  The ALJ further found that Plaintiff had a number of non-severe impairments and that none of her impairments met the criteria for disability set out in the Listing of Impairments.

    According to the ALJ, Plaintiff's impairments limited her to performing work at the light exertional level.  However, she could only occasionally push and pull and operate foot controls

with the bilateral lower extremities, and the same was true for her ability to operate hand controls with the bilateral upper extremities, She could also occasionally balance, stoop, kneel, crouch, crawl, and climb ladders or stairs, and could never climb ladders, ropes, or scaffolds. Additionally, Plaintiff should not work in areas with a high concentration of dust, fumes, gases, or other pulmonary irritants or where there was exposure to unprotected heights or moving mechanical parts.  She also needed ready access to a bathroom.  From a mental point of view, Plaintiff could do simple, routine, repetitive tasks as part of a low-stress job which required only occasional decision-making and involved only occasional changes in the work setting.

Given this residual functional capacity, the ALJ determined that Plaintiff was unable to perform her past relevant work as a home attendant, day care attendant, and child care attendant. At the administrative hearing, the vocational expert testified that someone of Plaintiff's age and educational history and who had the limitations ascribed to her by the ALJ could perform unskilled light jobs such as small parts assembler, garment sorter, and price marker.  The ALJ accepted this testimony and found that those jobs existed in significant numbers in the national economy.  He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment, asserts the following claims of error.  She argues (1) that the ALJ failed to include use of a cane in the list of Plaintiff's functional restrictions; (2) that the ALJ erred by not finding that she suffered from another severe disorder, irritable bowel syndrome, and by not finding that this disorder imposed additional functional restrictions; and (3) that the ALJ impermissibly based the residual functional capacity finding on his own lay interpretation of the evidence as opposed to basing it on the medical opinions of record.

## II.  THE KEY EVIDENCE

The Court will begin its review of the record by summarizing Plaintiff's testimony at the administrative hearing.  It will then recap the relevant information contained in the medical records.

Plaintiff first testified that she lived with her husband in a ground floor apartment.  She had a driver's license and drove three or four times per week.  She was a high school graduate. The last time she worked was in January, 2018 as a home respite care worker for disabled children.  She had done that job for several years on a part-time basis.  Before that, she was a daycare worker, also on a part-time basis, and also worked as a teacher's aide for young children.

Next, Plaintiff testified about her various impairments.  She had injured her right knee and it had never improved, and she also had pain across her lower back and radiating down her right leg and into her left hip.  She used both a cane and a walker, and had a prescription from her doctor for the cane. Additionally, Plaintiff suffered from neck pain which radiated into her shoulders and restricted the motion of her neck.  Her treatment included ibuprofen and injections in her hip.  Plaintiff had also been diagnosed with fibromyalgia which may have caused all of her

other symptoms plus random muscle pain, primarily in her arms and head.  She also experienced weakness in her legs and had fallen occasionally, and she had dizzy spells at times.  She had had heart surgery as well and took medication for her heart condition.  Ten years before, she had been diagnosed with COPD, for which she took medication and used an inhaler.  Humidity and cold weather exacerbated that condition.  Other problems included hearing loss and sleep apnea as well as tingling and pain in her hands which followed a double mastectomy.  She napped daily due to difficulty sleeping and as a side effect of her medication.

Plaintiff said that she had been diagnosed with acid reflux disease as well.  She took medication for that but still experienced problems after eating, and she was diagnosed with irritable bowel syndrome which caused cramping and an urgent need to use the bathroom.  She usually needed ten bathroom breaks per day.  Finally, she said that she had a skin condition which caused soreness and blisters.

From a mental health standpoint, Plaintiff said she was being treated for anxiety.  She could not take antidepressants because of interactions with her heart medicine, so her treatment was limited to counseling.  She experienced depressive symptoms as well as panic attacks.  Her symptoms had gotten worse since she stopped working.

Plaintiff also testified about her daily activities.  She got up in time to take her morning medications, and after breakfast she might visit her children and grandchildren or go to a medical appointment.  She also did some household chores like cleaning and washing dishes.  She alternated sitting and standing to deal with pain and stiffness, and said she could sit for fifteen minutes and stand and walk for ten.  She was able to dress herself but wore clothing that was easy to get on an off.

The vocational expert, Alissa Smith, identified Plaintiff's past work as a home attendant, a daycare attendant, and a child care attendant.  She was then asked questions about a hypothetical person who could do light work with various restrictions.  She testified that such a person could not do Plaintiff's past jobs but could work as a small parts assembler, garment sorter, or price marker.  She also gave numbers for those jobs as they exist in the national economy.  Ms. Smith also identified some sedentary jobs which a person with those restrictions could do.  Lastly, she said that someone who would miss two days of work per month or would be off task for 20% of the time could not be gainfully employed at any exertional level.

The medical records are voluminous.  They are well summarized by the ALJ and the parties' memoranda, and the Court's review will focus on those portions pertinent to the ultimate resolution of the case.

The ALJ mentions, in his summary of Plaintiff's testimony, the fact that she said her doctor prescribed her a cane.  Plaintiff points out in her memorandum that her treating physician, Dr. Karpie, signed a medical certification on June 13, 2018, in connection with her application for a disability parking permit, stating that due to Plaintiff's various conditions, she was

temporarily in need of an assistive walking device. Dr. Karpie said that she would need it until March 31, 2019. (Tr. 44). Dr. Karpie also noted, on a form he completed in November, 2018, that Plaintiff walked with a cane, and he also stated on that form that she was unable to return to work. (Tr. 53).

In his decision, the ALJ recapped the evidence concerning treatment of Plaintiff's left hip pain, noting that she appeared to get significant relief through cortisone injections. She had also been treated for lower back pain and right hip pain, and although the records showed that conservative treatment had not improved these conditions, a combination of medications brought her significant relief. The ALJ also noted that at her consultative physical examination in 2015, she described a range of daily activities she could perform, including cooking, cleaning, doing laundry, grocery shopping, and attending church, and the physical examination did not reveal any substantial abnormalities in her strength, gait, or range of motion.

Since one of Plaintiff's claims focuses on the opinion evidence, it is helpful to describe it. Such evidence is sparse. The consultative examiner, Dr. Siddiqui, whom Plaintiff saw in 2015, did not believe that Plaintiff had any exertional limitations, but he thought that due to her history of respiratory illnesses, she should avoid dust, smoke, and other irritants. Plaintiff's oncologist said that she could not lift over ten pounds due to her mastectomy. (Tr. 1176). There are also a number of treatment notes scattered throughout the record indicating short temporary periods when Plaintiff was unable to work; most of them speak in terms of days or weeks of disability rather than any period of disability approaching twelve months, and many of them contain a date on which Plaintiff was released to go back to work.

Plaintiff also argues that her IBS should have been characterized as a severe impairment. There is evidence in the record that she had a history of that impairment. In September, 2017, she was treated in the emergency room with an "8 day history of intermittent, waxing and waning diffuse abdominal pressure and bleeding, associated with severe diarrhea" including more than ten episodes the day before. (Tr. 820). Testing did not reveal any abdominal abnormalities, however, and she was discharged in improved condition. At an earlier doctor's appointment in 2016, Plaintiff reported a history of loose bowel movements during the day with no warning, as well as some episodes of fecal incontinence. (Tr. 897). She related the same symptoms at other times. *See, e.g.,* Tr. 921, 988. The latter note indicated that she had some relief with immodium. A treatment note from December 5, 2017, related that Plaintiff had had an extensive workup for chronic diarrhea (but not a colonoscopy, which she refused) and that there were no significant objective findings. That note also recites that Plaintiff was put on a trial of budesonide with "a remarkable response" which included no episodes of either diarrhea or fecal incontinence. (Tr. 1481). She did report a worsening of her symptoms in early 2018 when she stopped taking the medication, and her doctor's recommendation was to restart it. (Tr. 1632-34). There do not appear to be any additional notes from that treating source indicating how effective this recommendation was. However, in 2018, Plaintiff was given a prescription for adult diapers to treat incontinence due to IBS. (Tr. 39). There is no indication whether the 2017 prescription addressed the issue satisfactorily, but Plaintiff points out in her memorandum that she had to

leave the administrative hearing twice to use the restroom.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV. DISCUSSION

#### A. Use of a Cane

Plaintiff's first claim of error is that the ALJ failed to find that she needed to use a cane for walking despite the fact that her doctor had prescribed it. Citing to Social Security Ruling 96-9p, she notes that in order for a claimant to establish that she needs to use a cane, there must be medical documentation of that need (which there is here), and if that documentation exists, the failure of an ALJ to make a finding on the issue constitutes reversible error. The Commissioner raises multiple arguments in response to this assertion, including the fact that the medical forms completed by Dr. Karpie were not part of the record considered by the ALJ and that there were numerous records indicating that Plaintiff walked with a normal gait and without an ambulatory aid. Plaintiff does not address this issue in her reply.

The record confirms the Commissioner's argument that the documents signed by Dr. Karpie concerning Plaintiff's use of a cane were submitted to the Appeals Council and were not before the ALJ when he made his decision.  In fact, the second parking permit application post-dates the ALJ's decision by about three weeks and therefore could not have been part of the record which he reviewed.  Plaintiff has also not argued that the Appeals Council erred by refusing to reopen the case based on this evidence.  However, the Court must still consider it.  As the court in *Jennifer K. v. Comm'r of Soc. Sec.*, 2019 WL 2995157, at *5 (N.D.N.Y. July 8, 2019) said, interpreting the Court of Appeals' decision in *Lesterhuis v. Colvin*, 805 F.3d 83 (2d Cir. 2015), *"Lesterhuis* ... held that when reviewing the Commissioner's decision, "[w]e 'review the entire administrative record which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner].' " *Id*. (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)) (emphasis added)." *See also Westhoven v. Comm'r of Social Security*, 2019 WL 1541053 (W.D.N.Y. April 9, 2019).  Reversal on the basis of such evidence does depend, however, on whether it is new and material to the ALJ's decision; if it would not reasonably have changed the result reached by the ALJ, no further action on the Court's part is required.

Here, there are several reasons why the parking permit applications - the only documents in which a medical source has indicated the need to use a cane - would not have affected the ALJ's decision.  First, as the Commissioner points out, there are multiple examination notes, starting with the consultative examination but including many others, which reflect that Plaintiff walked with a normal gait and which did not mention that she either needed or used a cane.  Such evidence provides substantial support that a claimant does not need to use a cane.  *See, e.g., Kellner v. Colvin*, 2013 WL 3200581 (C.D. Cal. June 24, 2013).  Second, the earlier permit application states that Plaintiff's need to use a cane was temporary and that she was expected to recover her ability to walk without it in less than twelve months.  The later permit application indicated the condition was permanent, but there is no evidence that she needed to use a cane at any time before June of 2018, when the first permit application was signed.  Additionally, the vocational expert was asked to, and did, identify sedentary jobs that Plaintiff was capable of performing.  As this Court observed in *Stover v. Saul,* 2020 WL 897411 (W.D.N.Y. Feb. 25, 2020), using a cane is not inconsistent with the residual functional capacity to do sedentary work, and on the forms he completed, Dr. Karpie indicated that Plaintiff was unable to walk 200 feet without stopping, suggesting that she could stand and walk for short periods of time, which is usually what sedentary work requires.  Give this record, it is unlikely that had the ALJ been provided with these two applications, he would have made a different decision, and the Court concludes that the decision he did make is supported by substantial evidence even considering these documents.  For all these reasons, the Court finds no merit in Plaintiff's first claim of error.

### B.  Irritable Bowel Syndrome as a Severe Impairment

Secondly, Plaintiff asserts that the ALJ erred by failing to find that her IBS was a severe impairment.  She points to the evidence summarized above as proof that her condition was serious enough to cause functional impairment, and claims that the ALJ erred in the manner in

which he discounted her claim, finding that she had responded well to treatment.  The Commissioner, in turn, argues that the ALJ reasonably interpreted the record to show that Plaintiff did respond well to treatment, that the record did not show that the severe symptoms which Plaintiff reported from time to time were present on a continuous basis, and that the ALJ did incorporate some functional restrictions from IBS into his residual functional capacity finding.  The Court begins its analysis of this issue by examining what the ALJ said in the portion of his decision where he found that IBS was not a severe impairment.

As this Court said in *Mitchell v. Comm'r of Soc. Sec.*, 2019 WL 4415123, at *3 (W.D.N.Y. Sept. 16, 2019), "[a]n impairment is 'not severe' if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. *See* 20 C.F.R. § 404.1522; Social Security Ruling (SSR) 96-3p...."  In finding that Plaintiff's IBS was not severe, the ALJ concluded that this condition (along with several others) were non-severe "because the medical evidence establishes that the claimant has only a slight abnormality that has no more than a minimal effect on the claimant's ability to perform basic work activities ... for at least twelve months." (Tr. 16).  In support of this conclusion, the ALJ referred to Exhibit 38F/2 (the note about the trial of budesonide) as showing that "the claimant had a remarkable response to medication regarding her IBS symptoms...." *Id*.  The ALJ also found that Plaintiff's testimony about her symptoms (presumably including those caused by IBS) was not entirely consistent with the medical evidence (Tr. 21), a conclusion which Plaintiff has not disputed.  Last, he found that there were some functional limitations stemming from Plaintiff's need to use the bathroom during working hours, even though he did not regard the condition as severe. *Id*.  As noted above, the residual functional capacity finding included the fact that Plaintiff "must have ready access to a bathroom, meaning in general proximity of the work area...." (Tr. 19).

Courts have held that evidence of improvement in IBS symptoms due to medication can justify a finding that a claimant's IBS was not a severe impairment. *See, e.g., Danielle G. v. Berryhill*, 2019 WL 364467 (N.D.N.Y. Jan. 30, 2019).  This Court has also held that, given that "it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ," *Beaman v. Commissioner*, 2020 WL 473618, *6 (W.D.N.Y. 2020), the absence of medical evidence that a claimant's IBS causes more functional limitations than those imposed by the ALJ justifies affirming the ALJ's determination. *See Robert D.M. v. Comm'r of Social Security*, 2021 WL 1169187 (March 29, 2021).  Although it can be reversible error for an ALJ not to include functional restrictions from intestinal disorders found not to be severe, *see Ames v. Berryhill* 2017 WL 1276706 (W.D.N.Y. Apr. 6, 2017), that is not what happened here.  There was evidence in the record from which a reasonable person could have concluded, as did the ALJ, that Plaintiff's IBS was controllable with medication at least to the extent that the only accommodation she needed was ready access to a bathroom in the workplace.  That being so, the Court must, under the substantial evidence standard, affirm that conclusion.

### C. Residual Functional Capacity Determination

Plaintiff's third claim of error focuses on the ALJ's residual functional capacity

determination.  She notes that the ALJ did not exactly follow any of the opinion evidence in determining her functional capacity and argues that he must therefore have substituted his own lay judgment for that of the medical professionals.  According to Plaintiff, the ALJ's rejection of each medical opinion deprived his ultimate conclusion of substantial evidentiary support and necessitates a remand.  The Commissioner, citing to *Tankisi v. Comm'r of Social Security*, 521 Fed. App'x 29 (2d Cir. Apr. 2, 2013), argues that the mere fact that a residual functional capacity finding does not mirror any medical opinion does not require remand, and that the generally normal examination findings and her range of daily activities support a finding that Plaintiff could do a limited range of light work.

This Court has confronted this issue multiple times.  In *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 400 (W.D.N.Y. 2018), the Court said that "[s]imply because the ALJ did not adopt precisely the opinions of [the medical sources] does not mean that the RFC assessment is not consistent with their assessment of Plaintiff's capabilities."  In other words, the absence of a medical opinion (or compilation of opinions) that are exactly tracked in an ALJ's finding is not automatically grounds for remand.  Rather, it is the Court's task, on review, to determine if the ALJ's finding is consistent with the record.  Consequently, "the ALJ's opinion need 'not perfectly correspond with any of the opinions of medical sources cited in his decision,' and the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'"  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 587 (W.D.N.Y. 2018), quoting *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013).

The ALJ in this case did not give a great amount of weight to any of the opinion evidence.  He discounted Dr. Siddiqui's opinion that Plaintiff had few, if any, functional restrictions because "the longitudinal record supports that the claimant experienced pain from her musculoskeletal impairments, which limited her ability to perform exertional and other activities..." (Tr. 22).  He also gave little weight to the oncologist's opinion concerning Plaintiff's lifting capabilities, concluding that the same longitudinal record showed that she was more capable than Dr. Soniwala believed.  He was similarly not convinced by any other opinion in the record, noting that many of the opinions were unsupported by any evidence and did not contain specific functional limitations or that they dealt with limited time frames.  Ultimately, the ALJ derived his residual functional capacity finding from the evidence that Plaintiff had been treated for both musculoskeletal and respiratory impairments, indicating that exertional, postural, and environmental limitations existed, but concluded that the evidence also showed that she was not totally precluded from working because she had many normal examinations and could engage in a wide range of daily activities. (Tr. 24).

There are some troubling aspects about this decision.  It is not, strictly speaking, a blend of competing opinion evidence because there was only one opinion - Dr. Siddiqui's - which addressed a relatively full range of work-related functions, and that opinion was almost completely disregarded.  Dr. Soniwala expressed views only on Plaintiff's ability to lift and carry weight, and he did so only from the perspective of her oncologist, apparently not taking any of her musculoskeletal impairments into account.  Those were the predominant conditions for

which Plaintiff received treatment. On the other hand, the ALJ resolved a number of issues in Plaintiff's favor, such as including the need to have ready access to a bathroom and finding that Plaintiff had limitations in the use of her arms and legs to push, pull, or operate controls. He also included a host of environmental restrictions and psychological limitations, despite his finding that she had no severe mental impairment. The record also contains testimony that even if Plaintiff were limited to sedentary work, she could do jobs like document specialist, toy stuffer, and printed board screener. The question then becomes whether, assuming that the ALJ committed error by crafting a residual functional capacity finding which, in part, contains limitations that are only thinly supported by the record, was that error prejudicial enough to require a remand?

In this particular case, and on this particular record, the answer is no. This Court has declined to find reversible error where an ALJ's residual functional capacity finding is in many ways more restrictive than that of the medical experts, *see Glab v. Comm'r of Social Security*, 2018 WL 3422062 (W.D.N.Y. July 16, 2018), and has concluded, as well, that if such a finding is made in error, the error is harmless. *See, e.g. Cheryl T. v. Comm'r of Soc. Sec.*, 2021 WL 695100, at *4 (W.D.N.Y. Feb. 23, 2021). This Court has also considered it relevant that no medical opinion or other evidence would preclude a claimant from working at the particular exertional level described in the ALJ's residual functional capacity finding. *See, e.g., Wiggins v. Berryhill*, 2019 WL 1856259 (W.D.N.Y. Apr. 25, 2019).

Here, with the exception of the oncologist's opinion, there is no evidence stating that Plaintiff could not do light work, and the ALJ's decision is certainly more restrictive than Dr. Siddiqui's opinion. Additionally, even if the lifting limitation imposed by Dr. Soniwala were honored, it basically limited Plaintiff to sedentary work, and the vocational expert identified a significant number of such jobs available to Plaintiff. Therefore, while it is problematic that an ALJ would come up with a residual functional capacity finding which has many restrictions that appear loosely connected to the record or are not supported by expert opinion, in this particular case Plaintiff does not appear to have been prejudiced. Under those circumstances, the Court finds no merit in her final claim of error.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9), **GRANTS** the Commissioner's motion for judgment on the pleadings (Doc.13), and directs the Clerk to enter judgment in favor of the defendant.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**